**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| UNION STEEL,     ) <br>            ) <br>        Plaintiff,    ) <br>            )     Ct. No. 10-00106 <br>    v.        ) <br>            ) <br> UNITED STATES,    ) <br>            ) <br>        Defendant.    ) <br>            ) |  |

### COMPLAINT

Plaintiff Union Steel ("Plaintiff"), by and through counsel, alleges herein as follows:

### JURISDICTION

1. Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, *as amended* ("the Act"), 19 U.S.C. §§ 516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii).  This action is an appeal of the International Trade Administration of the U.S. Department of Commerce's ("Commerce") final results in the fifteenth antidumping duty administrative review covering certain corrosion-resistant carbon steel flat products ("CORE") from Korea.  *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Final Results of the Fifteenth Administrative Review*, 75 Fed. Reg. 13,490 (Dep't Commerce March 22, 2010) ("*Final Results*"), and accompanying Issues and Decision Memorandum (March 15, 2010), available at http://ia.ita.doc.gov/frn/summary/korea-south/2010-6258-1.pdf..  The *Final Results* cover the period August 1, 2007 through July 31, 2008.

2. This Court has jurisdiction by reason of 28 U.S.C. § 1581(c).

## STANDING

3. Plaintiff Union is a manufacturer of CORE in Korea and an exporter of CORE to the United States. Plaintiff is therefore an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiff was also a party to the antidumping duty administrative proceeding that led to the determination that is being challenged herein. Accordingly, Plaintiff has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

## TIMELINESS OF THIS ACTION

4. On March 22, 2010, Commerce published in the *Federal Register* the challenged *Final Results*. Today, March 23, 2010, Plaintiff is concurrently filing a summons and complaint pursuant to Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Act, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii), which is within thirty (30) days of publication of the *Final Results* in the *Federal Register*. Plaintiff's summons and complaint has thus been filed within the statutorily prescribed periods, and this action is thus timely filed.

## COUNT 1

5. Plaintiff hereby incorporates by reference paragraphs 1 through 4 of this complaint.

6. In calculating cost of production, Commerce reallocated Union's actual manufacturing costs used a quarterly cost averaging methodology. In so doing, Commerce deviated from its established practice with respect to the circumstances under which Commerce will average costs over a shorter period than the full period of review. Furthermore, Commerce failed to apply the statutory "cost recovery" test mandated by 19 U.S.C. §1677b(b)(2)(D), which provides that prices shall be considered to provide for recovery of costs within a reasonable

period of time if they are above the weighted average per unit cost of production for the period of review. Commerce's decision to apply the quarterly cost averaging methodology used in the *Final Results* is unsupported by substantial evidence and is otherwise not in accordance with law, and resulted in the overstatement of (i) the weighted-average dumping margin (and the resulting assessment rate) for Plaintiff's sales and entries during the period of review covered by the challenged *Final Results*, and (ii) the cash deposit rate of estimated antidumping duties required by the *Final Results* for all of Plaintiff's CORE entered subsequent to the publication date of the *Final Results* contested herein.

## **COUNT II**

7. Plaintiff herein incorporates by reference paragraphs 1-6 of this complaint.

8. In the *Final Results* Commerce arbitrarily limited price comparisons to only monthly weighted average home market prices within the same three-month "quarter" (as defined by Commerce) as the U.S. sale, in contravention of its long-established practice and of its regulation defining the "contemporaneous" month for purposes of price-to-price matching. Commerce's price comparison methodology is unsupported by substantial evidence and is otherwise contrary to law and resulted in the overstatement of: (i) the weighted-average dumping margin (and the resulting assessment rate) for Plaintiff's sales and entries during the period of review covered by the challenged *Final Results*, and (ii) the cash deposit rate of estimated antidumping duties required by the *Final Results* for all of Plaintiff's CORE entered subsequent to the publication date of the *Final Results* contested herein.

## COUNT III

9. Plaintiff herein incorporates by reference paragraphs 1-8 of this complaint.

10. In computing the general and administrative ("G&A") and interest expense ratios used to compute the cost of production, Commerce in the *Final Results* used the 2008 financial statement of Plaintiff and Plaintiff's parent company, rather than the 2007 financial statements. This methodology conflicts with the methodology used in previous administrative reviews, and led to a distorted calculation by increasing Plaintiff's interest expense for expenses incurred by Plaintiff's parent company after the close of the period of review. Commerce's decision to use the 2008 financial statements rather than the 2007 financial statements is unsupported by substantial evidence and is otherwise not in accordance with law, and resulted in the overstatement of: (i) the weighted-average dumping margin (and the resulting assessment rate) for Plaintiff's sales and entries during the period of review covered by the challenged *Final Results*, and (ii) the cash deposit rate of estimated antidumping duties required by the *Final Results* for all of Plaintiff's CORE entered subsequent to the publication date of the *Final Results* contested herein.

## COUNT IV

11. Plaintiff herein incorporates by reference paragraphs 1-10 of this complaint.

12. In the *Final Results*, Commerce used model match criteria that classified Plaintiff's sales of laminated CORE products as "painted" products. Those model match criteria thus have misclassified Plaintiff's merchandise by failing to account for the significant differences in cost, price, physical characteristics, end use applications, and production processes between painted products and laminated products. Commerce's decision to apply these erroneous model match criteria is unsupported by substantial evidence and is otherwise not in

accordance with law, and resulted in the overstatement of: (i) the weighted-average dumping margin (and the resulting assessment rate) for Plaintiff's sales and entries during the period of review covered by the challenged *Final Results*, and (ii) the cash deposit rate of estimated antidumping duties required by the *Final Results* for all of Plaintiff's CORE entered subsequent to the publication date of the *Final Results* contested herein.

## COUNT V

13. Plaintiff herein incorporates by reference paragraphs 1-12 of this complaint.

14. In the *Final Results* Commerce set to zero all negative dumping margins (instances where export price or constructed export price is greater than normal value) when calculating Plaintiff's weighted average dumping margin, antidumping duty assessment rate, and cash deposit rate for future entries despite the fact that Commerce has abandoned the practice of zeroing in antidumping investigations.  The antidumping statute, however, provides no basis for treating administrative reviews differently from investigations with respect to zeroing, and Commerce has failed to articulate any reasonable statutory interpretation that would support applying a different method of calculating weighted-average dumping margins in administrative reviews than it now applies in investigations.  Commerce's application of zeroing in the *Final Results* is contrary to law, and resulted in the overstatement of (i) the weighted-average dumping margin (and the resulting assessment rate) for Plaintiff's sales and entries during the period of review covered by the challenged *Final Results*, and (ii) the cash deposit rate of estimated antidumping duties required by the *Final Results* for all of Plaintiff's CORE entered subsequent to the publication date of the *Final Results* contested herein.

## COUNT VI

15.     Plaintiff herein incorporates by reference paragraphs 1-14 of this complaint.

16.     In the *Final Results* Commerce included in the calculation of normal value Plaintiff's home market sales of certain "overrun" products, despite the fact that Commerce had consistently and conclusively determined that such overrun sales are outside the ordinary course of trade in all previous segments of this proceeding.  Commerce's inclusion of overrun sales in the calculation of normal value is unsupported by substantial evidence and otherwise contrary to law and resulted in the overstatement of: (i) the weighted-average dumping margin (and the resulting assessment rate) for Plaintiff's sales and entries during the period of review covered by the challenged *Final Results*, and (ii) the cash deposit rate of estimated antidumping duties required by the *Final Results* for all of Plaintiff's CORE entered subsequent to the publication date of the *Final Results* contested herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court: (1) hold that the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law to the extent alleged herein; (2) remand this matter to Commerce to recalculate Plaintiff's dumping margin and cash deposit rate: (i) using period of review average costs as reported by Plaintiff, (ii) using the normal contemporaneity period for price-to-price comparisons as provided for in Commerce's regulations, (iii) using the 2007 financial statements of Plaintiff and Plaintiff's parent company to compute the G&A an interest expense ratios, (iv) using appropriate model match criteria that separately account for laminated products, (v) without zeroing negative dumping margins, and (vi) excluding Plaintiff's sales of overrun sales; and (3) provide such other relief as this Honorable Court deems just and proper.

Respectfully submitted,

/s/ Donald B. Cameron
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins

TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004-2134
(202) 274-2971

*Counsel to Union Steel*

Dated: March 23, 2010